Carl D. Crowell, OSB No. 982049
email: crowell@kite.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiffs

| | |
|---|---|
| **VOLTAGE PICTURES, LLC**,<br><br>    Plaintiff,<br><br>v.<br><br>**DOE NO. 1**,<br>(IP 76.115.222.150)<br><br>    Defendant. | Case No.: 6:14-cv-00816-MC<br><br>**FIRST AMENDED COMPLAINT**<br><br>ORS 647.105 – State Trademark<br><br>Equitable Relief Only |

In its First Amended Complaint, Voltage Pictures, LLC, alleges:

JURISDICTION AND VENUE

1. This is a suit for trademark infringement under ORS 647.105.

2. Jurisdiction in Oregon is proper as based pre-filing investigations it is believed that the defendant resides in Marion County, Oregon.

PARTIES

THE PLAINTIFF

3. Plaintiff Voltage Pictures, LLC ("Voltage" / "Plaintiff") is a limited liability company with principal offices in Los Angeles, California that produces, markets and distributes motion pictures including the motion picture titled *Dallas Buyers Club*.

COMPLAINT        Page 1 of 12

The Rights of the Plaintiff

4. *Dallas Buyers Club* is an acclaimed motion picture nominated for six Academy Awards (Oscars), winning Best Actor, Best Supporting Actor and Best Makeup. The motion picture also won numerous Screen Actors Guild Awards, Golden Globes and other awards.

5. In the marketing of the motion picture, plaintiff has branded the motion picture with its distinctive and registered trademark, VOLTAGE PICTURES, which identifies the motion picture as being associated with plaintiff.

6. Plaintiff has sole and exclusive rights to use the mark VOLTAGE PICTURES in association with its goods and services both within the State of Oregon and nationwide.

7. The VOLTAGE PICTURES mark is unique, distinctive, and clearly visible prior to and following the presentation the motion picture.

8. The VOLTAGE PICTURES mark is valuable, well known and famous as it is associated with numerous award winning motion pictures in addition to *Dallas Buyers Club*.

9. The mark VOLTAGE PICTURES has been registered with the State of Oregon pursuant to ORS 647.015, Registry Number 42677.

10. Pursuant to ORS 647.095, a person who without the consent of Voltage Pictures, uses the VOLTAGE PICTURES mark in connection with the distribution of a reproduction or counterfeit product is liable for the equitable remedies provided in ORS 647.105.

11. Pursuant to ORS 647.105, "The owner of a mark registered under this chapter may proceed in a civil action to seek an injunction against the … use, display or sale of a counterfeit or imitation of the mark."

12. Plaintiff comes to this court seeking the equitable remedies provided by ORS Chapter 647, namely an injunction against those who without authorization reproduce and distribute its registered trademark.

## DEFENDANT

13. Defendant is a participant in a peer-to-peer file sharing network.

14. The defendant has been identified as "Doe No. 1" in the instant case is a party who has used the internet protocol ("IP") address 76.115.222.150 at 2/8/14, 10:12:30 PM UTC to reproduce and distribute the motion picture *Dallas Buyers Club* marked with plaintiff's registered trademark without authorization.

15. The defendant has improperly and without authorization from plaintiff downloaded, shared and uploaded content marked with plaintiff's registered trademark using a peer-to-peer network.

16. The defendant has infringed plaintiff's state trademark rights.

17. The defendant's conduct is more specifically described below.

## BACKGROUND

18. In the production of a motion picture there are countless expenses and labors, many of which are not evident in the final product, including writers, staff persons, construction workers and others.

19. Indeed, the final product produced, which may be less than two hours long is often sourced from countless hours of preparation, filming, post-production and promotion to bring the final product to viewers.

COMPLAINT

Voltage v. Does

CROWELL LAW
P.O. Box 923
Salem, OR 97308-0923
Tel:  503-581-1240

Page 3 of 12

20. The end product that many consumers see is a few hours in a theater or a DVD product that once production is complete has a nominal cost on a per-viewing experience.  However, this is misleading as the costs to view a completed motion picture or produce a single DVD are nominal compared to what is often years of work by many of people leading up to the end product.

21. Added to this is that people seen related to the end product, movie stars, directors and other persons of note, are generally perceived as highly compensated.  This leads to the common misunderstanding that people involved in motion pictures are already wealthy.

22. When the perception is that those affiliated with a motion picture are already wealthy and the end product, such as a DVD, costs little to make, a reality disconnect often builds in the minds of much of the public, namely that those associated with a motion picture do not need any more money.

23. When this reality disconnect meets with the ready availability of pirated copies of motion pictures and the ease with which they can be pirated and downloaded at an almost anonymous level, many people feel justified in their pirating or theft.

24. The result is that despite the industry's efforts to capitalize on internet technology and reduce costs to end viewers through legitimate and legal means of online viewing options such as Netflix™, Hulu™, and Amazon Prime™, there are still those that use technology to replicate and steal content and undermine the efforts of creators through piracy and unauthorized distribution of content.

25. As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "taking someone's intellectual property is a serious offense, punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish

COMPLAINT                                                                                                  Page 4 of 12

Voltage v. Does
CROWELL LAW
P.O. Box 923
Salem, OR 97308-0923
Tel:  503-581-1240

that many participants seem to consider it equivalent to jaywalking – illegal but no big deal.  But it is a big deal. Under U.S. law, ***stealing intellectual property is just that – stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm***."

(emphasis added)

26. In recognition of the growing problems and challenges with counterfeiting and piracy, The Oregon House of Representatives passed House Memorial 2 in 2013, which made the following findings:

> Whereas the United States and other nations share **the challenge of combating intellectual piracy and the counterfeiting of intellectual property such as** … **films**… and technologies that affect the quality of life; and
> Whereas **intellectual piracy and counterfeiting have a significant impact on Oregon's economy**, and the economies of other states and of nations around the world, which results in job and earnings losses, reduced tax revenues and increased threats to public health and safety; and
> …
> **Whereas protecting and enforcing intellectual property rights is crucial to the future of our innovation-based economy**; and
> Whereas industries that use intellectual property extensively generate nearly $7.7 trillion in gross output and account for more than 60 percent of total exports from our nation; and
> Whereas industries that use intellectual property extensively … employ more than 19 million Americans, whose salaries average about 60 percent higher than salaries in industries that do not make extensive use of intellectual property; and
> Whereas intellectual property infringement can undermine the nation's economic security; and
>  Whereas violations of intellectual property rights, ambiguities in the law and a lack of enforcement create uncertainty in the marketplace and in the legal system and undermine consumer trust; and
> Whereas **intellectual property, including trademarks, [are] essential** …; and
> …
> Whereas **failing to adequately protect and enforce intellectual property rights will increase counterfeiting and illicit trade**;
>     …

(emphasis added)

27. It is clear that giving effect to ORS Chapter 647, the enforcement of Oregon statutes and intellectual property rights, and in particular the fight against counterfeiting and piracy are of critical importance to both the United States of America and the State of Oregon.

## PEER-TO-PEER INTERNET PIRACY

28. Peer-to-peer networks, at least in their most common form, are computer systems that enable internet users to: 1) make files (including motion pictures) stored on each user's computer available for distribution to other users or peers; 2) search for files stored on other users' computers; and 3) transfer ("share") duplicates of files between computers via the Internet.

29. The particular peer-to-peer protocol at issue in this suit is the BitTorrent protocol.

30. To use BitTorrent, a user intentionally downloads a program they then install on their computer called a "client." The BitTorrent client is the user's interface during the downloading/uploading process. The client may be free, supported by advertising, offer upgrades or add on services for a fee, or a combination of several options.

31. A user then intentionally visits a "torrent site" or network site to find media or content available for download, often using a standard web browser.

32. A torrent site is often an advertising revenue or subscription supported index of media or content being made available by other users on the network and maintains a listing of books, movies and television programs among other protected content.

33. A user then uses the torrent site to connect with other users and exchange or "share" content though the BitTorrent protocol often with many users at the same time.

COMPLAINT                                                                                           Page 6 of 12

Voltage v. Does
CROWELL LAW
P.O. Box 923
Salem, OR 97308-0923
Tel:  503-581-1240

34. Internet piracy and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

35. To increase the value of the advertising and sometimes subscription access sold by torrent sites, many torrent sites work to expand the pool of available titles and speed of downloads through increasing the number of member peers and thus the desirability of their clients and networks. To accomplish this they reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

36. A significant element of the BitTorrent model is that those who participate and download content not only share and upload content with others, but participants are often rewarded through various means based on the volume and availability of content participants in turn provide the network. In sum, there is a feedback incentive for participants as they obtain not only the benefit of their pirated content, but they obtain other benefits by increasing the availability of pirated content to others.

37. There are a number of users that participate in peer-to-peer networks and receive personal gain or compensation in that the networks they use reward those who provide large numbers of files for distribution to others.

38. On information and belief, many parties, and possibly defendant, have been compensated through benefits received for their participation in expanding the availability of pirated content to others through BitTorrent networks, including works that bear plaintiff's mark.

39. The use of BitTorrent does more than cause harm through the theft of intellectual property. The BitTorrent distribution of pirated files is a model of business that profits from theft

through sales and advertising and a system of rewards and compensation to the participants, each of whom contribute to and further the enterprise.

40. The defendant is a participant in the BitTorrent distribution of pirated files furthering a model of business that profits from theft of intellectual property including plaintiff's intellectual property.

## IP Addresses

41. An Internet Service Provider, ("ISP"), grants access to the Internet and the ability to send and receive information, whether in the form of an email, photo or motion picture. To connect to the Internet a user must contract with an ISP and create an account for service either directly, or through an intermediary such as a subscriber.

42. The ISP then generally assigns each subscriber a unique IP address. An IP address is like the address used on an envelope. It is the identifier the defendant uses to tell the world not only where they are sending data from, but also the location to where any requested data should be sent.

43. Doe No. 1 is a party who has used IP address 76.115.222.150 at 2/8/14, 10:12:30 PM UTC to reproduce and distribute a motion picture marked with plaintiff's registered mark without authorization though the BitTorrent peer-to-peer network.

44. Plaintiff has, to a reasonable degree of scientific certainty, learned the ISP used by the defendant, the torrent file copied and distributed by the defendant, the BitTorrent client application utilized by the defendant, and the likely location of the defendant, at least down to the state level, if not the county and city as determined by geolocation technology.

COMPLAINT                                                                                           Page 8 of 12

Voltage v. Does

CROWELL LAW
P.O. Box 923
Salem, OR 97308-0923
Tel: 503-581-1240

45. Plaintiff's investigator has further established a direct peer-to-peer link with the defendant, confirming not only the apparent IP address used by the defendant, but also the actual IP address overcoming any concerns with forging or "spoofing" an IP address.

46. Plaintiff's investigator has further monitored defendant's IP address to the extent practical, confirming the IP address is not an incidental or transitory participant in BitTorrent file exchanges, but observed as associated with persistent and prolonged BitTorrent activity.  As such the IP address is likely to go to a specific authorized user and persistent infringer as opposed to an occasional guest or visitor or party without authorized and secure access to the specific IP address.

47. Despite the best available investigative techniques, it is impossible for plaintiff to identify the defendant by name at this time.

48. Plaintiff believes the defendant's ISP Comcast has information identifying the subscriber who is either the defendant or who is a party with information needed to identify the defendant if defendant acted through the account of the subscriber who was assigned the IP address.  Plaintiff intends to obtain relevant information by subpoena from Comcast to identify the subscriber and any subsequent intermediary in order to learn the identity of the defendant.

### Conduct of Defendant

49. Plaintiff has recorded defendant identified herein as reproducing and distributing the motion picture together with plaintiff's trademark via BitTorrent as plaintiff's investigator has been able to download a portion of the motion picture from the defendant identified herein, and plaintiff has been able to download a complete file of the motion picture through BitTorrent, obtaining an integral portion from the defendant.

COMPLAINT                                                                                                                Page 9 of 12

Voltage v. Does
CROWELL LAW
P.O. Box 923
Salem, OR 97308-0923
Tel:  503-581-1240

50. Defendant's conduct is part of a collective enterprise with a large number of other parties, collectively distributing unauthorized reproductions of products bearing plaintiff's trademark.

51. On information and belief, defendant's conduct was unauthorized and in violation of the license and terms of access to the Internet through their ISP, Comcast.

52. On information and belief, defendant was a willing and knowing participant in the infringing of plaintiff's trademark rights.

53. Attached hereto as Exhibit 1 is a partial listing of some of the activity observed associated with Doe No. 1's IP address.

54. As can be seen from the data the BitTorrent piracy at issue is unlikely to be that of an occasional visitor or guest as the activity is persistent over time.

55. As can be seen from the data observed with Doe No. 1's IP address, the BitTorrent piracy at issue is unlikely to be from a young child or "innocent" as content does not reflect the type of content that might be associated with a young child.

56. Additional data observed associated with Doe No. 1's IP address indicates the defendant is likely a mature adult with specific viewing habits.

57. The conduct associated with the defendant's IP address represents notable economic harm not only to plaintiff but also to the people of the State of Oregon.

58. Based on observed activity the defendant is prolific proponent of the BitTorrent distribution system advancing the BitTorrent economy of piracy causing injury to plaintiff.

59. Some of the titles observed associated with Doe No. 1's IP address indicate association with the BitTorrent site TORRENTING.COM as seen in items 31, and 41.

60. TORRENTING.COM actively promotes the distribution of the motion picture bearing plaintiff's mark as can be seen from a printout of the web page shown on Exhibit 2.

61. TORRENTING.COM is torrent index site that profits from piracy of content through requesting "donations" as can been seen in Exhibit 3.

62. As such it is likely Doe No. 1 was involved with the promotion of TORRENTING.COM, at least to an incidental degree.

63. Co-opting and distributing pirated content for the promotion and benefit of third parties is regularly observed in the conduct associated with Doe No. 1's IP address.

64. While it may or may not be that Doe. No. 1 is personally and directly generating revenue or benefit from their conduct, defendant's conduct as a whole furthers such efforts on behalf of others as evidence indicates they persistently download and distribute works, including the motion picture bearing plaintiff's mark for the benefit third parties.

CLAIM FOR RELIEF

ORS 647.105 – State Trademark

65. Defendant, without the authorization or consent of plaintiff, used and distributed a reproduction of content marked with plaintiff's registered trademark VOLTAGE PICTURES.

66. Defendant acted with knowledge and in bad faith in their infringement of plaintiff's rights.

67. Plaintiff is entitled to an order enjoining defendant from infringing plaintiff's rights and directing defendant to delete all unauthorized reproductions of content branded with plaintiff's trademark.

///

///

COMPLAINT                                              Page 11 of 12

Voltage v. Does
CROWELL LAW
P.O. Box 923
Salem, OR 97308-0923
Tel:  503-581-1240

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against the defendant as follows:

A.       For entry of permanent injunction enjoining the defendant from infringing plaintiff's rights in plaintiff's trademark, including without limitation by using the Internet to reproduce or distribute any products which bear plaintiff's trademark except pursuant to a lawful license or with the express authority of plaintiff.  And further directing defendant to destroy all unauthorized reproductions of products bearing plaintiff's trademark.

B.       For plaintiff's reasonable costs and attorney fees pursuant to ORS 647.105(2).

C.       For such other and further relief as deemed proper.

DATED:  May 23, 2014.

Respectfully submitted,

CROWELL LAW

/s/ Carl D. Crowell
Carl D. Crowell, OSB No. 982049
P.O. Box 923
Salem, OR 97308
Tel:  503-581-1240
Email: crowell@kite.com
Of attorneys for the plaintiff